UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHADRICK WILLIE ROY,

    Plaintiff,

    v.

CONTRA COSTA COUNTY, et al.,

    Defendants.

Case No. 15-cv-02672-TEH

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This matter came before the Court on December 21, 2015 for a hearing on Defendants City of Concord's and Contra Costa County's motions to dismiss Plaintiff's First Amended Complaint for failure to state a claim. Docket Nos. 39, 40. After carefully considering the parties' written and oral arguments, the Court hereby GRANTS WITH PREJUDICE Defendants' motions, for the reasons set forth below.

**BACKGROUND**

On September 29, 2015 this Court granted the City and County Defendants' motions to dismiss Plaintiff's Complaint without prejudice to amendment. Order Granting Defs.' Mots. to Dismiss (Docket No. 34). On October 14, 2015, Plaintiff filed the First Amended Complaint, bringing the same five causes of action and alleging largely the same facts as the Complaint. First Am. Compl. ("FAC") (Docket No. 35).[1] The City and County both filed motions to dismiss the FAC on October 28, 2015, and the County included a Request for Judicial Notice with its motion. Def. City of Concord's Mot. to Dismiss Pl.'s First Am. Compl. ("City Mot.") (Docket No. 39); Def. Cty. of Contra

---

[1] When the Court ordered that the FAC be filed "within two weeks of the date of [the September 29, 2015] order," it intended a deadline of October 13, 2014. Order Granting Defs.' Mots. to Dismiss at 16. The FAC was therefore filed one day late. But the Court recognizes that there is arguably ambiguity in how to count "two weeks" from the date of an order, and the Court therefore accepts this late filing.

Costa's Mot. to Dismiss Pl.'s First Am. Compl. ("County Mot.") (Docket No. 40); Def. Cty. of Contra Costa's Request for Judicial Notice (Docket No. 41).[2]

Plaintiff's first two causes of action are state law claims for false imprisonment and assault and battery, and the latter three causes of action are 42 U.S.C. § 1983 ("Section 1983") claims alleging violations of: (1) the Fourteenth Amendment; (2) the Fourth Amendment; and (3) Defendants' duty to train. FAC ¶¶ 32-81. All five of Plaintiff's causes of action stem from several 2013 arrests, a subsequent detention, and Plaintiff's treatment while in County custody.

With respect to the arrests, Plaintiff alleges that "[t]he affidavit in support of the warrant issued [for his original arrest]," prepared by Officer Greg Pardella, "was lacking in probable cause." *Id.* ¶ 15.[3] Plaintiff alleges that the contents of the affidavit (*id.* ¶¶ 11-17, 21, 23-25) rendered it "so lacking in probable cause that no reasonable officer would have procured its issuance and this was done in violation of [Plaintiff's] due process rights" (*id.* ¶ 66). Specifically, Plaintiff alleges that "nothing [about Plaintiff] matched what [the victim] told the police," including his height, tattoo, and address. *Id.* ¶ 65. The FAC also includes new information about the dates and locations of each of Plaintiff's various arrests. *Id.* ¶¶ 18-20, 22. Finally, Plaintiff alleges that during one of the arrests (the FAC does not specify which), Defendants (presumably City employees) used "unwarranted force" by handcuffing Plaintiff and "shoving [] him into the back of a patrol car." *Id.* ¶ 43.

With respect to the detention, Plaintiff alleges that between May 18 and July 25, 2013, he was imprisoned at the Martinez and West County Detention Facilities in Contra Costa County. *Id.* ¶¶ 2, 27. While imprisoned at the Martinez Detention Facility, Plaintiff was subjected to inhumane conditions, as follows:

> [Plaintiff] was imprisoned for three days with no food, no

---

[2] Plaintiff did not oppose the County's Request for Judicial Notice. The request is therefore GRANTED AS UNOPPOSED. *See Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (affirming dismissal for failure to file opposition, as required under the district's civil local rules).

[3] The affidavit and warrant were judicially noticed with the City Defendant's first motion to dismiss. *See* Docket No. 15-1.

2

> clock, and no water. The room was dirty. There were at least 30 prisoners. There was no space to move. It was 70 or 80 degrees. There were no windows inside the room. There was no officer or guard to watch over [Plaintiff]. There were sick people inside. There was no way to defecate or urinate for three days. There was no toilet paper; no pillows; no blankets.
>
> [Plaintiff] was put in lock down for no reason at about 10:30 p.m. Deputy King put him in room 16 and he had to stay there until lunch at 10:00 a.m. He was forced to sleep on a metal bunk bed; no toilet tissue; he rang the emergency bell but no one came. [He] wanted to lie down, but he had to wait on shift deputy to let him out. The deputy said "you're fucking welcome I helped you out." During his imprisonment, [He] was given food that was moldy and had plastic in his food.

*Id*. ¶¶ 27, 29. Plaintiff also alleges that he received "inadequate medical health care" during this detention (*id*. ¶ 52), though he never specifies what illness or injury required medical attention.

With respect to municipal policy, Plaintiff makes only one allegation: "[Plaintiff's] detention without food, water, and bathroom facilities was systematic in that the guards took groups of prisoners out in shifts. The first shift was between 3:30 and 4:00 a.m. and the second was somewhere between 10:00 a.m. and 6:00 p.m. over a three day period," (*id.* ¶¶ 28, 55), and Defendants' (presumably Contra Costa County's) "failure [] to adopt any policy that provided for detention in humane conditions was both grossly negligent and systemic in nature in that it happened over time and not sporadically" (*id.* ¶ 56).

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 547, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Such a showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545, 555.

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted). Dismissal should be with leave to amend, unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296, 1298 (9th Cir. 1998).

**DISCUSSION**

The Court will address Plaintiff's federal causes of action first, as these causes of action form the basis of federal jurisdiction.

**I.  Federal Causes of Action**

Plaintiff's third, fourth, and fifth causes of action allege violations of Section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To state a claim under Section 1983, the complaint must show: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).

Plaintiff does not name as a defendant any individual City or County actor, but

4

rather sues only the City, County, and Does 1-20.  FAC ¶ 4-5.[4]  In order to survive the motions to dismiss, then, Plaintiff must have stated Section 1983 claims against the City and County as municipal entities.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court held that municipal entities are "persons" subject to Section 1983 liability, not on the basis of respondeat superior, but when the alleged deprivation of rights can be attributed to municipal policy or custom.  436 U.S. at 690-92.  A municipality can therefore be sued directly under Section 1983 only where (1) the alleged unconstitutional conduct is the result of an official policy, pattern, or practice, or (2) a government practice, although "not authorized by written law, . . . [is] so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Id*. at 691 (citation omitted).  As to the latter basis for liability, "[t]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled . . . policy.' "  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Id.*

Plaintiff should by now be aware that his Section 1983 claims against the City and County cannot survive in the absence of properly pleaded *Monell* liability.[5]  Yet the FAC still provides little in the way of allegations of a "policy or custom" of constitutional violations by either the City or County.  For these reasons, as discussed below for each cause of action, the Court hereby DISMISSES WITH PREJUDICE all three of Plaintiff's federal causes of action under Section 1983.

---

[4] Plaintiff brings the third cause of action against the County only; the fourth cause of action against all defendants (i.e. the County, City, and Does 1-20); and the fifth cause of action against the County and the City.  FAC ¶¶ 51, 57, 67.

[5] *See* Order Granting Defs.' Mots. to Dismiss at 7-13 (dismissing the Complaint for failure to state a claim of municipal liability under *Monell*).

**a. The Third Cause of Action – Section 1983 (Fourteenth Amendment) – Fails to State a *Monell* Claim Against the County**

Plaintiff brings the third cause of action under Section 1983, alleging a violation of his Fourteenth Amendment rights. FAC ¶¶ 51-56. Specifically, Plaintiff alleges that "[b]y its policies and practices specifically, general operations for jail facilities in the custody division, Defendant [County of Contra Costa] subjected Plaintiff to a substantial risk of harm and injury from violence from other prisoners and inadequate medical health care." *Id.* ¶ 52. Though this cause of action reads as an allegation of two separate Due Process violations – one for violation of Plaintiff's right to personal security, and one for inadequate medical care – Plaintiff clarified at the December 21 hearing that the third cause of action uses the Fourteenth Amendment as the vehicle for advancing a third legal theory: that Plaintiff's "conditions of confinement" were unconstitutional.[6]

Even assuming that the conditions of Plaintiff's confinement were unconstitutional – be it under the Fourteenth Amendment, the Eighth Amendment, or otherwise – the FAC nowhere states which "policy or custom" caused the vague constitutional violations that are alleged. Plaintiff alleges only that "[his] detention without food, water, and bathroom facilities was systematic in that the guards took groups of prisoners out in shifts." FAC ¶¶ 28, 55. This is legally and factually inadequate, as it is devoid of specifics about the responsible "policy or custom." For example, while Plaintiff alleges that he was denied food and water while in custody, he fails to identify any specific policy promulgated by the County (or an individual with final policy-making authority employed thereby) requiring personnel to deny food and water to individuals held in custody. Rather, Plaintiff makes the conclusory allegation that he was abused pursuant to some unspecified "policies and practices" (*id.* ¶ 52), which is insufficient to meet Plaintiff's burden under *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of

---

[6] Plaintiff did not allege a "conditions of confinement" claim under the Eighth Amendment, despite the Court's suggestion that the Eight Amendment might be the appropriate vehicle for these allegations. Order Granting Defs.' Mots. to Dismiss at 2 n.3.

action, supported by mere conclusory statements, do not suffice . . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). While the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court. Such a burden is especially important here, where it is facially implausible that the County maintains an official, County-sanctioned policy to gravely abuse individuals held in custody with no apparent motivation other than hostility.

The Court specifically cautioned that the FAC would "need to provide (1) some factual allegations to support [Section] 1983 liability for Due Process violations, identifying what sort of Due Process claim is being made and on what basis; and (2) allege what 'policy or custom' was responsible for those violations" to survive a second motion to dismiss. Order Granting Defs.' Mots. to Dismiss at 10. But the FAC still fails to provide sufficient factual matter to support a *Monell* claim that a County policy was responsible for violating Plaintiff's Fourteenth Amendment substantive due process rights. Moreover, at the December 21, 2015 hearing, the Court asked Plaintiff if he would have any additional facts to allege if he amended the FAC to add a "conditions of confinement" claim under the Eight Amendment, and he replied that the FAC contains all necessary and available factual allegations. It is therefore clear that further amendment could not possibly cure the FAC's deficiencies. *Steckman*, 143 F.3d at 1296. Accordingly, the Court hereby DISMISSES WITH PREJUDICE Plaintiff's third cause of action.

### b. The Fourth Cause of Action – Section 1983 (Fourth Amendment) – Fails to State a *Monell* Claim Against Either the City or the County

Plaintiff brings the fourth cause of action under Section 1983, alleging a violation of his Fourth Amendment rights. FAC ¶¶ 57-66. Specifically, Plaintiff alleges that, "[i]n falsely imprisoning Plaintiff, Defendants [City and County] denied Plaintiff the right under the United States Constitution to be free from unreasonable search and seizure" (*id*. ¶ 61), and "Defendants seized Plaintiff's person in violation of law" (*id.* ¶ 62). Plaintiff alleges that his arrests and detention were unlawful because the warrant issued to secure his arrest

7

"was so lacking in probable cause that no reasonable officer would have procured its issuance and this was done in violation of [Plaintiff's] due process rights." *Id.* ¶ 66.

Even assuming the FAC's new allegations – specifically, those regarding Officer Pardella's affidavit and the subsequent arrest warrant – were sufficient to state an individual constitutional violation by Pardella, they do nothing to address the most fatal defect of the original Complaint: the fourth cause of action still makes absolutely no mention of any "policy or practice" as required under *Monell*.[7] There is not even an allegation that "sloppy" warrant drafting occurred more than once, other than the unsupported statement that "the officers involved systematically drafted warrants without probable cause." *Id.* ¶ 70. This falls far short of "sufficient factual matter . . . to state a claim . . . plausible on its face" (*Iqbal*, 566 U.S. at 678) that the City had a "permanent and well settled . . . policy" (*Trevino*, 99 F.3d at 918) of drafting warrants without probable cause. Again, Plaintiff's pleading burden is especially important here, where it is facially implausible that the City maintains an official, City-sanctioned policy that would essentially state: "Seek warrants without probable cause."

The Court specifically cautioned that the FAC would need to "allege what 'policy or custom' was responsible for any [Fourth Amendment] violations" to survive a second motion to dismiss. Order Granting Defs.' Mots. to Dismiss at 12. But the FAC still fails to provide sufficient factual matter to support a *Monell* claim that either a City or County policy was responsible for violating his Fourth Amendment rights. It is therefore clear that further amendment could not possibly cure the FAC's deficiencies. *Steckman*, 143 F.3d at 1296. Accordingly, the Court hereby DISMISSES WITH PREJUDICE Plaintiff's fourth cause of action.

### c. The Fifth Cause of Action – Section 1983 (Training) – Fails to State a *Monell* Claim Against Either the City or the County

Plaintiff brings the fifth cause of action under Section 1983, alleging that

---

[7] Though this cause of action is brought against the County as well, the FAC makes no allegations whatsoever of even an individual Fourth Amendment violation by the County.

8

Defendants failed to train their employees in violation of the Constitution. FAC ¶¶ 67-81. A municipal entity can only be liable for a failure to train "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Negligent, or even grossly negligent training is not enough. *Id.* at 391-92. Rather, a plaintiff must prove "deliberate indifference" in one of two ways. "First, a municipality could fail to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* at 396 (O'Conner, J. concurring). "Second, . . . municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion." *Id.*

As to the City, Plaintiff alleges that the City "had a duty to make sure it trained its officers on the proper way to determine whether probable cause existed for a warrant." *Id.* ¶ 67. Specifically, Plaintiff alleges that "the officers involved should have followed the POST standards for Obtaining Search and Arrest Warrants, as described in Post Field Training Manual, Chapter 10.3," including that "[t]he trainee shall explain the laws and procedures for obtaining search and arrest warrants, to minimally include: Probable cause necessity." FAC ¶ 68-69. The crux of Plaintiff's factual theory, then, is that the City did not train its officers that probable cause is necessary for an arrest warrant, and that this must be true because "the officers involved systematically drafted warrants without probable cause." *Id.* ¶ 70.

Again, even assuming that Officer Pardella's conduct in obtaining a warrant for Plaintiff's arrest was unreasonable and unconstitutional, Plaintiff's allegations fail to state a claim for *municipal* liability under *City of Canton*. Plaintiff offers neither a single additional example of such unconstitutional behavior by Officer Pardella (or anyone else) nor a shred of evidence that officers were not actually trained to properly apply the probable cause standard. Plaintiff merely concludes that because City officers "systematically" drafted warrants without probable cause, the City must not have provided

9

them with any training on the probable cause standard. The language of Plaintiff's conclusions – specifically, reliance on the word "systemically" as the only evidence of policy – is precisely the sort of "label[] and conclusion[]," that the Supreme Court has counseled is insufficient. *Twombly*, 550 U.S. at 1965. And again, holding Plaintiff to his pleading burden is especially important here, where it is facially implausible that the City fails to train that probable cause is required for an arrest warrant because the only warrant provided for the Court's review was ratified by a magistrate judge under the probable cause standard. *See* Docket No. 15-1. Accordingly, Plaintiff fails to state a "failure to train" claim against the City.

As to the County, Plaintiff alleges that the County "knew of increased complaints against the [custody] department and excessive force violations, and problems caused by overcrowding such as increased violence and risk of harm," but "failed to provide further training to prevent these violations." FAC ¶¶ 73, 76. But Plaintiff neither alleges a specific training program or policy that never was nor provides any factual allegations that the County acted with deliberate indifference in not providing it. Indeed, the only specific training program Plaintiff discusses cuts against his claim for failure to train: "Defendants had a policy for its custody division which provided for security and safety of all inmates housed within the custodial facilities. This also required the defendants to provided clean, sanitary housing and clothing for inmates, including providing access to food and water." *Id.* ¶ 74. The Supreme Court has counseled that an officer's failure to follow a policy such as the one described by Plaintiff does not itself indicate a failure to train:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality] . . . . It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury causing conduct. Such a claim could be made about almost any encounter resulting in injury . . . . And plainly, adequately trained officers occasionally make mistakes; the fact that they

10

> do says little about the training program or the legal basis for holding the [municipality] liable.

*City of Canton*, 489 U.S. at 390-91.

Given that the only policy actually provided for the Court's review required County employees to provide food, water, and a safe living environment to inmates, Plaintiff's threadbare allegations that the County had received "complaints" of excessive force and therefore must have failed to train its employees in how to maintain a humane environment falls far short of "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 566 U.S. at 678.  Accordingly, Plaintiff fails to state a "failure to train" claim against the County.

Again, the FAC represented Plaintiff's second opportunity to provide sufficient factual support for a failure to train claim, and the Court specifically cautioned that the FAC would "need to provide some factual allegations to support [Section] 1983 liability for failure to train, including which Defendants failed to train their personnel, and what sort of training said Defendants should have provided but did not" to survive a second motion to dismiss.  Order Granting Defs.' Mots. to Dismiss at 13-14.  But Plaintiff still fails to provide sufficient factual matter to support a claim for municipal liability on "failure to train" theory against either the City or the County.  It is therefore clear that further amendment could not possibly cure the FAC's deficiencies.  *Steckman*, 143 F.3d at 1296.  Accordingly, the Court hereby DISMISSES WITH PREJUDICE Plaintiff's fifth cause of action.

## II.   Supplemental Jurisdiction

Plaintiff's remaining causes of action arise under state law.  A federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A court may decline to exercise supplemental jurisdiction, however, where it "has dismissed

11

all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In considering whether to retain supplemental jurisdiction, a court should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (internal quotation marks omitted). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

As discussed above, Plaintiff has not satisfied the pleading requirements for any federal cause of action. And the factors that guide this Court's decision whether to retain jurisdiction over Plaintiff's remaining state law causes of action for false imprisonment and assault and battery – economy, convenience, fairness, and comity – favor dismissal. This case is still at the pleading stage, and as such, dismissing the case at this stage would conserve judicial resources. But perhaps more importantly, Defendants have raised several state law defenses to Plaintiff's state law claims. *See, e.g.*, County Mot. at 5-6 (arguing that Plaintiff's state law claims are barred for failure to comply with the California Tort Claims Act); City Mot. at 6-8 (same); *id.* at 11 (arguing that the City is immune from liability for false imprisonment under California law). Dismissal therefore promotes comity, as it allows California courts to interpret these questions of state law.

For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's first and second causes of action under state law.

//
//
//
//
//
//

**CONCLUSION**

For the foregoing reasons, the City and County Defendants' motions to dismiss Plaintiff's First Amended Complaint are GRANTED WITH PREJUDICE as to the third, fourth, and fifth causes of action, and the Court declines to exercise supplemental jurisdiction over the remaining two state law causes of action.

**IT IS SO ORDERED.**

Dated: 01/05/16

THELTON E. HENDERSON
United States District Judge